COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


NEWPORT NEWS SHIPBUILDING
 AND DRY DOCK COMPANY
                                 MEMORANDUM OPINION[*] BY
                              JUDGE ROBERT J. HUMPHREYS
v.   Record No. 2914-00-1            JUNE 26, 2001

ROBERT E. TOWNSEND


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Christopher R. Hedrick (Lexine D. Walker;
          Mason, Cowardin & Mason, P.C., on brief), for
          appellant.

          Robert J. Macbeth, Jr. (Rutter, Walsh, Mills
          & Rutter, L.L.P., on brief), for appellee.


     Newport News Shipbuilding and Dry Dock Company ("employer")

appeals a decision of the Virginia Workers' Compensation

Commission, awarding Robert E. Townsend permanent partial

disability benefits based upon a 17% permanent partial

impairment rating, and denying the employer's application for

credit against future compensation for the overpayment of

benefits paid to Townsend.  Because this opinion has no

precedential value and because the parties are fully conversant

with the facts, we do not recite them in detail here.

_____

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Townsend injured his right knee on December 9, 1997, when he jumped off of a platform at his worksite with the employer. On June 5, 1998, Dr. Sheldon Cohn advised that Townsend had reached maximum medical improvement and issued permanent work restrictions. The employer was unable to offer Townsend a position within his restrictions.

The employer sent a letter to Dr. Cohn on June 8, 1998, requesting a clarification of the relation between Townsend's "present injury" and a prior right knee injury he had suffered in 1989. Dr. Cohn responded that Townsend suffered from a 17% permanent impairment rating of his right leg. Dr. Cohn opined that Townsend's condition and work restrictions were related to the 1989 injury and attributed 10% of the impairment rating to the 1989 injury, and 7% to the 1997 injury.

On August 14, 1999, by letter, Dr. Cohn elaborated on his opinion, stating:

> With this in mind, it appears that Mr. Townsend has developed, over time, a degenerative problem which is patellofemoral arthrosis. I believe that is the major cause of his knee problems at this time. I do not believe that this history changes his impairment, however, I do believe that the injury which he had on 12/9/97 exacerbated his pre-existing patellofemoral arthritis to the point where he is unable to work at his usual job. I do feel that his permanent work restrictions are due to his most recent work injury.

On January 6, 1999, Townsend began employment with a new employer, earning an average weekly wage of $417.81, and

-

received pay for this work while receiving compensation benefits, until June 28, 1999.

Townsend conceded that the employer was entitled to a credit against his award for permanent disability for the benefits paid after January 6, 1999. However, the employer asserted that it was entitled to a credit against future compensation for an overpayment of temporary partial benefits for the period when Townsend was working for another employer but did not disclose his employment.

The employer's case manager testified that Townsend forwarded a letter to the employer on February 5, 1999, stating that he was employed at the Western Regional Jail in Portsmouth. By way of the letter, Townsend also informed the employer that he would be earning a salary of $21,000.00. The case manager stated that she had to call three different jails to verify Townsend's employment, which was actually with Hampton Roads Regional Jail in Portsmouth, Virginia. When she contacted the jail, the supervisor requested a subpoena before releasing and/or verifying the information the employer needed to file an application for a credit before the commission. The employer was ultimately unable to verify the necessary information until June 18, 1999.

The Deputy Commissioner denied the employer's request to divide the 17% permanent partial impairment rating between the 1989 injury and the 1997 injury, finding that the evidence

-

established Townsend had suffered no residual disability from his 1989 injury, making the employer responsible for the aggravation of Townsend's pre-existing condition, and therefore his entire permanent impairment. The deputy also found that Townsend provided an accurate and reasonably prompt notification of his return to employment and his salary as required pursuant to Code § 65.2-712. The commission affirmed the deputy's decision.

It is well established that:

> factual findings of the [commission] will be upheld on appeal if supported by credible evidence. The causal relationship, or lack thereof, between a disease and employment is a question of fact. Similarly, the question [of causation] raised by conflicting expert medical opinions is one of fact. The deference that we give to the commission's fact-finding on medical questions is based upon the "unwisdom of an attempt by . . . [courts] uninitiated into the mysteries to choose between conflicting expert medical opinions." Consequently, where the commission resolves the conflict in medical testimony, on appeal the medical issue will not be settled by judicial fiat, and the commission's decision is binding so long as it is supported by credible evidence.

Stancill v. Ford Motor Co., 15 Va. App. 54, 58, 421 S.E.2d 872, 874 (1992) (citation omitted).

Thus, contrary to the employer's assertion, conflicting medical evidence is not sufficient to warrant the reversal of a commission decision. See Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268 (2000). The commission gave

-

little weight to the opinion of Dr. Cohn attributing 10% of Townsend's permanent impairment to his 1989 injury and 7% to his 1997 injury, due to Townsend's conflicting medical history which demonstrated that prior to 1997, Townsend had never been diagnosed with any permanent impairment, provided with a permanent impairment rating, nor placed under any permanent work restrictions. The commission also considered Dr. Cohn's own conflicting opinions pertaining to the causation of Townsend's permanent work restrictions. Issues of weight and credibility are uniquely within the province of the commission, and we will not substitute our judgment for that of the trier of fact. See City of Portsmouth Sheriff's Dept. v. Clark, 30 Va. App. 545, 553, 518 S.E.2d 342, 346 (1999); see also Dollar General Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996).

With regard to the employer's request for a credit for an overpayment of benefits paid to Townsend, Code § 65.2-712 clearly requires that an employee receiving compensation immediately:

> disclose to the employer, when the employer is self-insured, or insurer in all other cases, any . . . return to employment, [or] increase in his earnings . . . . Any payment . . . later determined . . . to have been procured by the employee . . . by fraud, misrepresentation, or failure to report any . . . return to employment, [or] increase in earnings . . . may be recovered from the claimant . . . by the employer. . . either by way of credit against future

-

> compensation payments due the claimant
> . . ., or by action at law against the
> claimant . . . .

However, "[d]isclosure to employer is all that is required under Code § 65.2-712, and that section does not dictate an exclusive means by which the employee is to accomplish that disclosure. The legislature could have required, as it did in Code § 65.2-600, that such disclosure be in the form of a written notice setting forth certain specific information, but it did not." Washington Metro. Area Transit v. Rogers, 17 Va. App. 657, 660, 440 S.E.2d 142, 145 (1994). In light of this, we find no error in the commission's application of Code § 65.2-712 as it pertains to this case and affirm the commission's decision.

Affirmed.